**Robert Glen HAMILL,
Plaintiff–Appellant,**

v.

**Robert L. WRIGHT, et al.,
Defendants–Appellees.**

No. 88–1121
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 26, 1989.

---

* Because of the death of Judge Hill, this matter is being handled by a quorum. 28 U.S.C. § 46(d).

Robert Glen Hamill, Grand Prairie, Tex., pro se.

Paul D. Rich, Asst. Atty. Gen., San Antonio, Tex., for Wright, Hicks, O'Reilly and Mattox.

Van Thompson, Jr., Asst. Dist. Atty., Ft. Worth, Tex., for Blais & Carpenter and Tarrant County, Tex.

Before RUBIN, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Robert Glen Hamill (Hamill) challenges the district court's dismissal of his 42 U.S.C. § 1983 claims against several state actors. He alleges these appellees denied his Sixth Amendment right to counsel during state court contempt proceedings that eventually resulted in his being imprisoned for failing to pay child support. Although a state court has found that Hamill's rights were in fact violated during the contempt hearings because he was not informed that he could have counsel appointed if he was indigent, *Ex Parte Hamill*, 718 S.W.2d 78 (Tex.App. —Fort Worth, 1986), we affirm the district court's dismissal of all Hamill's claims, with one slight modification.

### Facts and Proceedings Below

Hamill was served on February 12, 1985 with notice to appear in the state 231st Judicial District Court of Tarrant County on March 11, 1985, in connection with a contempt motion for failure to pay over $4000 in child support. He did not appear, and a bench warrant for his arrest was issued by Judge Maryellen Hicks of that court. Hamill was arrested on March 26, 1985, and held in the Tarrant County Jail until March 28, when he was released upon the condition that he appear on May 10, 1985, so the court could set a new hearing on the contempt motion. No record was made of the March proceedings other than the handwritten notation of Sean O'Reilly (O'Reilly)—Court Master of the Domestic Relations Office—stating that Hamill had been advised of his right to an attorney and his Fifth Amendment rights, and that he had waived them all.

At the May 10 hearing Hamill appeared before O'Reilly, who found him to be in contempt for willful failure to pay child support and recommended that he be committed to jail for 180 days. Hamill had informed O'Reilly that he was unemployed and could not afford to hire an attorney. *Ex Parte Hamill,* 718 S.W.2d at 79. O'Reilly advised Hamill of his right to have an attorney present at the contempt hearing, but she did not advise him that an attorney would be appointed to represent him if he could not afford one. *Id.* No hearing was held to determine if Hamill was indigent. O'Reilly earlier noted that Hamill had waived that right because Hamill did not request the appointment of counsel due to indigency and because Hamill had indicated a willingness to proceed *pro se. Id.*

The judgment and order committing Hamill to jail for 180 days were signed by Judge Robert L. Wright of the state 325th Judicial District Court of Tarrant County. Hamill was released and placed on probation on July 16, 1985.

Hamill brought this suit under 42 U.S.C. § 1983 on June 26, 1985, seeking injunctive relief and damages from Judge Wright, Judge Hicks, Court Master O'Reilly, Lawrence Blais, Director of the Domestic Relations Office, Dan Carpenter, Sheriff of Tarrant County, and Jim Mattox, Attorney General of Texas, alleging that he was denied his Sixth Amendment right to counsel. He also brought a federal habeas corpus action, which was dismissed for failure to exhaust state remedies.

Hamill then filed a petition for writ of habeas corpus in state court. That court found that O'Reilly's failure to advise Hamill of his right to appointment of counsel if he were indigent was a violation of Hamill's rights under the Sixth and Fourteenth Amendments. The state court granted the writ in October 1986 and found that Hamill's contempt conviction was void. *Ex Parte Hamill*, 718 S.W.2d at 79.

On August 7, 1986, Hamill amended his section 1983 complaint in federal court to add Tarrant County as a defendant. During the pendency of the state habeas petition, Hamill agreed to dismiss all his section 1983 claims for money damages against defendants O'Reilly, Wright, Hicks, and Mattox, and the district court issued an order to this effect on September 9, 1986. On September 17 the court granted the motions to dismiss filed on behalf of these defendants and appellees Blais and Carpenter.

Hamill appealed to this Court, which dismissed the appeal for lack of jurisdiction because the judgment of the district court adjudicated fewer than all the claims, as the claim against Tarrant County added in the August 7 amended complaint was then still pending in the lower court.

On October 6, 1987, the district court reopened the case and Hamill was allowed to file an amended complaint further defining his claim against Tarrant County for money damages, and adding as a defendant John Hill, then Chief Justice of the Texas Supreme Court, against whom Hamill sought equitable relief only. The district court on January 22, 1988, entered a second judgment dismissing Hamill's remaining claims against Tarrant County and Justice Hill. Hamill now appeals the district court's dismissal of his section 1983 claims against all of the above-mentioned defendants-appellees.

**Discussion**

*Injunctive Relief*

■ Hamill seeks an injunction to prohibit Wright, Hicks, O'Reilly, Mattox, and Hill from instituting future contempt proceedings against him. Although judicial immunity does not bar actions for prospective injunctive relief under section 1983, *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir.), *cert. denied*, 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985); *Adams v. McIlhany*, 764 F.2d 294, 299 n. 5 (5th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986), Hamill does not have constitutional standing to seek injunctive relief in these circumstances.

Hamill is no longer incarcerated and his contempt conviction was voided as a result of his state court habeas action. He argues that he still has a live controversy requiring injunctive relief because he is still under a child support order, has fallen further behind in his payments due to pursuit of this civil action, and because future contempt proceedings have been threatened against him. Such anticipated harm might well not be too speculative or remote for Hamill to claim standing. *See Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974) (granting declaratory judgment where plaintiff was merely threatened with state criminal prosecution if he handbilled in protest of Vietnam War); *Parker v. Turner*, 626 F.2d 1, 5 (6th Cir.1980) (discussing Supreme Court cases defining the extent of a plaintiff's standing to enjoin threatened state prosecutions, and ruling that fathers who could not afford to make child support payments and thus were likely to face future contempt proceedings had standing to challenge allegedly unconstitutional procedures routinely practiced by the state in such proceedings).

However, in any event we determine that, as to all defendants, Hamill's alleged injury is too speculative in the sense that there is no reason to believe that future contempt proceedings will be in any way constitutionally deficient. The state court has found that in past proceedings against Hamill his Sixth Amendment right to counsel was infringed, and we are naturally unwilling to assume, and there is nothing to indicate, that appellees will fail to heed this ruling in any future proceedings against Hamill. *Cf. City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (finding no standing to obtain an injunction where the city defendant—*after* plaintiff had been subjected to chokehold without legal justification—adopted new and less offensive policies on treatment of motorists stopped for traffic violations). We have no cause to enjoin future state proceedings in which no federal rights are in jeopardy.[1]

*Qualified Immunity of Sheriff Carpenter*

■■■ Hamill seeks money damages from Sheriff Carpenter on the ground that Carpenter illegally imprisoned him, and because Carpenter did not allow him to accrue good-time credits. Sheriff Carpenter's unopposed and undisputed affidavit, filed together with his motion to dismiss/motion for summary judgment, establishes that he did no more than execute a facially valid arrest warrant and place Hamill in jail. He attested that he acted in his official capacity and in good faith belief that his actions were legal. Sheriffs enjoy qualified immunity from damages for official actions taken in good faith. *Turner v. Raynes,* 611 F.2d 92, 93 (5th Cir.), *reh'g denied,* 614 F.2d 1298 (5th Cir.), *cert. denied,* 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed. 2d 129 (1980). As we said in *Turner:*

"It would be a strange and unworkable rule that required a sheriff, at his peril, to determine the ultimate legal validity of every warrant—regular on its face and issued by proper authority—before serving it. And though the question of good faith will doubtless usually be one

for the factfinder, the evidence of it here is undisputed and, indeed, there is no allegation or contention that the sheriff acted otherwise." *Id.*

Consequently, Hamill's claims against Sheriff Carpenter on this issue were appropriately dismissed. Hamill's allegation that Carpenter violated his constitutional rights by refusing to allow him to accrue good-time credits was also properly dismissed. Under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), a prisoner is not constitutionally entitled to good-time credit for satisfactory behavior. However, if state law creates a liberty interest in the credit, a prisoner is entitled to Fourteenth Amendment procedural due process in relation to that liberty interest. *Id.*

The statutory basis for good time in Texas county jails is found in Tex.Rev.Civ.Stat. Ann. art. 5118a (Vernon 1981, Supp.1989), which provides in pertinent part:

**"Commutation for good conduct; forfeiture of commutation; record**

"In order to encourage county jail discipline, a distinction *may* be made in the terms of prisoners so as to extend to all such as are orderly, industrious and obedient, comforts and privileges according to their deserts; the reward to be bestowed on prisoners for good conduct shall consist of such relaxation of strict county jail rules, and extension of social privileges as may be consistent with proper discipline. Commutation of time for good conduct, industry and obedience *may* be granted the inmates of each county jail by the sheriff in charge." (Emphasis added).

The granting or denial of good time under this statute—which applies to prisoners under sentence of contempt, *Ex Parte Rogers,* 633 S.W.2d 666, 669 (Tex.App.—Amarillo 1982)—is within the sole discretion of the sheriff. *Ex Parte Daniels,* 722 S.W.2d 707, 711–12 (Tex.Crim.App.1987) (en banc). This is reflected in the statutory language

---

**1.** We also note that there is no showing of either prior involvement or even possible future involvement on the part of defendants Hill and

Mattox. As to defendant Hicks, no prior wrong is shown.

providing that the sheriff "may" give good time credits rather than that the sheriff "shall" give them. The Supreme Court has stated that an inmate does not have a liberty interest in the mere possibility of a benefit, such as a discretionary parole-release determination, and is therefore not entitled to due process in regard to the granting or denial of such benefits. *Greenholtz v. Inmates of Nebraska Penal & Corrections,* 442 U.S. 1, 99 S.Ct. 2100, 2104–05, 60 L.Ed.2d 668 (1979). The *Greenholtz* Court distinguished between parole release and parole revocation, stating that "[t]here is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Id.* 99 S.Ct. at 2105. Likewise, there is a crucial distinction between the loss of already accrued good-time credits (in which the inmate-appellant was found to have a liberty interest in *Wolff*), and the discretionary accrual of such credits, as is the case in Texas county jails. Hamill had no liberty interest in accruing good-time credits, and therefore no Fourteenth Amendment right to procedural due process in regard to such accrual.

### Immunity of Blais

■ Hamill alleges that Blais, Director of the Domestic Relations Office for Tarrant County at the time of this incident and also the prosecutor in Hamill's child support contempt hearing, violated Hamill's constitutional rights by failing to provide legal services to him. We find that Blais, in his capacity as Director of the Domestic Relations Office, had no legal duty to ensure that Hamill was provided with counsel. Hamill has not identified the source of any such duty on Blais' part, or of Blais' authority to appoint counsel if so inclined. That obligation, in this case, was upon the state district court judge. *See* Tex.Code Crim.Proc.Ann. art. 26.04(a) (Vernon 1966, Supp.1989) (amended 1987).

Even if Blais had an obligation to obtain or appoint counsel for Hamill, Blais is entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in

those proceedings was pursuant to his quasi-judicial duties. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (ruling that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under Section 1983").

### Tarrant County's Liability

■ Hamill's complaint as to Tarrant County confusingly asserts that he does not complain of its failure to appoint counsel for him, but does complain that it had an obligation to provide him with the services of an attorney. In any event, however, Texas law makes only state court judges responsible for appointing attorneys for indigent criminal defendants. A county can exercise no authority over state court judges, as the latter are not county officials. *Cf. Holloway,* 765 F.2d at 525 (holding that state district judges, not being local officials, enjoy Eleventh Amendment immunity); *Clark v. Tarrant County,* 798 F.2d 736, 743–44 (5th Cir.), *reh'g denied,* 802 F.2d 455 (5th Cir.1986) (finding that the Tarrant County Adult Probation Department was immune from suit under the Eleventh Amendment because controlled by state district judges rather than the county).

### Section 1985 Conspiracy

■ Hamill alleges broadly that all of the appellees conspired in violation of 42 U.S.C. § 1985(3) to deny his civil rights and asserts in his appellate brief that Tarrant County had a "policy, practice, custom, or procedure" of denying indigent contemnors due process and equal protection, presumably by not appointing counsel for them. Insofar as this is simply another assertion of the section 1983 claims, it fails for the same reasons they do. Insofar as the claim is peculiarly under section 1985(3), it fails because Hamill, by identifying himself as a member of a class of indigent contemnors brought before state district judges and routinely denied the Sixth Amendment right to counsel, has not placed himself within a class of persons protected by section 1985(3). *See, e.g., McLean v. International Harvester Co.,* 817

F.2d 1214, 1219 (5th Cir.1987) (citing *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir.1980), *opinion vacated on reh'g*, 648 F.2d 340 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981), noting that the Fifth Circuit has "held that only two types of classes are protected by Section 1985(3): 1) those characterized by 'some inherited or immutable characteristic;' and 2) those characterized by 'political beliefs or associations.' "); *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir.) (same); *Roe v. Abortion Abolition Society*, 811 F.2d 931, 934–35 (5th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987) (section 1985(3) does not protect a class that exists only because its members are treated similarly by the defendant); *Daigle v. Gulf State Utilities Co., Local No. 2286*, 794 F.2d 974, 978–79 (5th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed. 2d 704 (1986) (a class of "scabs" not protected because any conspiracy was motivated by economic or commercial animus not within the scope of section 1985(3)).

*Pendent State Claims*

■ In his second amended complaint, Hamill alleged that the defendants falsely arrested and falsely imprisoned him. He did not detail any facts upon which these conclusions were based, or even state that he meant to assert these claims as separate state law causes of action. The district court, in dismissing Hamill's entire suit, did not address these as separate claims. Hamill argues on appeal, however, that these state law claims are pendent to his federal claims under section 1983 and should be heard by the district court. Assuming *arguendo* that these pendent claims were properly raised in the complaint, we find that the district court acted within its discretion in dismissing them.

Because we affirm the district court's pretrial dismissal of all of Hamill's federal claims against all appellees, the court did not abuse its discretion in dismissing the state law claims of false arrest and imprisonment. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). We modify the dismissal of these claims, however, to the extent that they were dismissed with prejudice. Hamill should not be barred from bringing these claims before a state tribunal. *Id.*

*Sanctions*

■ Appellees Blais, Carpenter, and Tarrant County seek an award of double costs and attorneys' fees against Hamill pursuant to Fed.R.App.P. 38 for bringing a frivolous appeal. Giving some, though not controlling, consideration to Hamill's *pro se* status, *see Clark v. Green*, 814 F.2d 221, 223 (5th Cir.1987), and considering the nature of his claims against those of the appellees who have sought Rule 38 sanctions, in the exercise of our discretion we decline to order the requested sanctions.

**Conclusion**

We affirm the district court's dismissal of all of Hamill's section 1983 claims. Hamill lacks standing to bring section 1983 claims for equitable relief because he does not have a live case or controversy under Article III of the Constitution. The court properly dismissed his claim for damages against Sheriff Carpenter because Carpenter is qualifiedly immune and because Hamill is not constitutionally entitled to procedural due process in respect to the Sheriff's decision on whether to grant or deny good-time credits. Appellee Blais is likewise immune from liability; also, Hamill has not shown that Blais had any duty to protect his right to counsel. Appellee Tarrant County has no duty to provide indigents with counsel, and no authority over state judges to force them to, so the claim against the county is properly dismissed. The dismissal of Hamill's pendent state law claims was within the district court's discretion, but should have been without prejudice.

Accordingly, the dismissal of Hamill's pendent state law claims is modified so as to be without prejudice (except as to refiling in federal court) and as so modified is affirmed; and the judgment as to all other claims and in all other respects is affirmed without modification.

MODIFIED IN PART AND AFFIRMED AS MODIFIED.