Opinion issued July 6, 2006






 

 


 


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-05-01162-CV
____________

IN RE D’JUANA PARR, Relator 




Original Proceeding on Petition for Writ of Habeas Corpus



 
O P I N I O N
          Relator D’Juana Parr requests habeas corpus relief, asserting that she is
illegally restrained by the trial court under its December 16, 2005 order that commits
her to confinement in the Harris County jail. We deny habeas corpus relief.
Factual Background
          Real party in interest, Bryan Parr, and D’Juana, who had a son in 1998,
divorced in Harris County on May 8, 2001.


 The trial court appointed Bryan and
D’Juana joint managing conservators of their son and ordered D’Juana to pay child
support of $126 per month, starting May 1, 2001, and continuing to be payable on the
first day of each month thereafter until their son became 18, or other specified
conditions, not relevant here, were fulfilled.
          In her habeas petition here, D’Juana asserts that on March 3, 2005, she filed,
in Montgomery County, Texas, a petition for divorce,


 alleging that after the signing
of the Harris County divorce decree, “the parties remarried by entering into an
informal marriage.” On April 11, 2005, D’Juana filed an amended petition for
divorce, which does not mention the informal marriage. It alleges that on June 8,
2001, that the parties entered into their second marriage and ceased to live together
as husband and wife on October 20, 2003. Further, it alleges that J.M.P. “is not under
the continuing jurisdiction of any other court” and “[t]here are no court-ordered
conservatorships, court-ordered guardianships, or other court ordered relationships
affecting the child the subject of this suit.” On June 7, 2005, counsel for Bryan faxed
a letter to the Montgomery County district clerk advising that Brian and D’Juana had
been divorced since May 3, 2001. On June 8, 2001, Brian filed a special appearance
in the Montgomery County proceeding.
          On July 29, 2005, in the Harris County case, Brian filed his first amended
motion for enforcement, asserting, among other things, that D’Juana had not made the
court ordered child support payments from May 1, 2001 to July 1, 2005. On October
5, 2005, the trial court heard the motion, and, on October 13, 2005, issued its order
finding D’Juana in contempt for not making the $126 child support payments on five
occasions from November 1, 2003 through March 1, 2004. For each of the five
violations of the 2001 decree, the trial court assessed D’Juana confinement in the
Harris County jail for 90 days, to run concurrently. In the October 13th order, the
trial court conditionally suspended the commitment, provided that, among other
things, D’Juana pay $100 per month against the $5,878.36 arrearage. In the order, the
trial court also set a date in December 2005 as a hearing date to determine whether
D’Juana had complied with the terms and conditions of the suspension of
commitment and community supervision, on which the trial court had placed
D’Juana.
          On December 16, 2005, the trial court held the compliance hearing. D’Juana’s
counsel asserted that the trial court did not have jurisdiction because of the divorce
petition pending in Montgomery County. After a telephone conference with the
Montgomery County judge, the trial court determined that it would go forward with
the compliance hearing.
          Following the hearing, the trial court issued an order (hereafter “the December
16th order”) finding that D’Juana had not complied with the terms and conditions of
the suspension of commitment portion of the October 13th order. In the December
16th order, the trial court revoked the suspension of commitment and committed
D’Juana to the Harris County jail for 90 days for each of the five violations of the
2001 divorce decree. Additionally, in the December 16th order, the trial court
provided that D’Juana should be confined from “day to day until . . . D’Juana Parr
has: (1) (2) (3).” D’Juana was placed in jail.
          Here, on petition for writ of habeas corpus, D’Juana asserts the following
issues: (1) the trial court did not have jurisdiction to conduct the compliance hearing
because of the divorce petition pending in Montgomery County, (2) the December
16th order is void because it orders more punishment than originally assessed in the
October 13th contempt order, and (3) the December 16th order is void because it
orders punishment for contempt without the ability for D’Juana to purge herself of
contempt.
 
Standard of Review
          The purpose of a habeas corpus proceeding is not to determine the ultimate
guilt or innocence of the relator, but only to ascertain whether the relator has been
unlawfully confined. Ex parte Gordon, 584 S.W.2d 686, 688 (Tex. 1979). In a
habeas corpus proceeding, the order or judgment challenged is presumed to be valid
until a relator has discharged her burden of showing otherwise.. Ex parte Occhipenti,
796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). A
relator bears the burden to show the contempt order is void and not merely voidable. 
In re Pruitt, 6 S.W.3d 363, 364 (Tex. App.—Beaumont 1999, orig. proceeding). 
Appellate courts may order the contemnor released only if the judgment is void
because of a lack of jurisdiction or because the contemnor was deprived of liberty
without due process of law. In re Houston, 92 S.W.3d 870, 875, 875–76 (Tex.
App.—Houston [14th Dist.] 2002, orig. proceeding). 
Jurisdiction/Venue
          In issue one, D’Juana asserts that she is entitled to her unconditional release
because the Harris County trial court was without jurisdiction to hear the enforcement
proceeding in that jurisdiction over the matter passed to the Montgomery County
court when she filed her divorce petition there. In support of this assertion, D’Juana
cites Texas Family Code section 155. 201(a):
On the filing of a motion showing that a suit for dissolution of the
marriage of the child’s parents has been filed in another court, and
requesting a transfer to that court, the court having continuing, exclusive
jurisdiction of a suit affecting the parent-child relationship shall, within
the time requied by Section 155.204, transfer the proceedings to the
court in which the dissolution of the marriage is pending. The motion
must comply with the requirements of Section 155.204(a)

Tex. Fam. Code Ann. § 155.201(a) (Vernon Supp. 2005). 
          Bryan asserts that by filing the divorce petition in Montgomery County,
D’Juana is attempting to use the court system as a shell game. In support of this
assertion, Bryan attaches, as Exhibit 1 to his first amended response to D’Juana’s
petition for habeas corpus relief, a certified copy of the Montgomery County court’s
order, signed February 8, 2006, sustaining Bryan’s special appearance and dismissing
D’Juana’s Montgomery County divorce petition with prejudice. In her reply brief,
D’Juana responds that Bryan’s first amended response should be struck because it
contains no citations to legal authority and because Exhibit 1 was not part of the
record before the trial court. Additionally, D’Juana asserts that she has filed a motion
for new trial in the Montgomery County case, and that, if it is unsuccessful, she
intends to challenge the dismissal order by regular appeal. We decline to strike
Bryan’ s first amended response or its Exhibit 1 because, without considering them,
we dispose of issue one on another ground as set out below.
          Section 155.201 is a venue statute. Cf. Leonard v. Paxson, 654 S.W.2d 440,
441 (Tex. 1983) (characterizing former Texas Family Code section 11.06(b),



antecedent statute to current section 155.201, as a venue provision of the Family
Code). Venue is a procedural right. In re Calderon, 96 S.W.3d 711, 719 (Tex.
App.—Tyler 2003, orig. proceeding). There is a distinct difference between
jurisdiction and venue. Etchieson v. State, 574 S.W.2d 753, 759 (Tex. Crim. App.
1978). Jurisdiction concerns the authority of a court to try a case whereas venue has
to do with the place or county where a case may be tried. Id. A court’s jurisdiction
contains two elements: (1) jurisdiction of the subject matter and (2) jurisdiction of the
person. Ex parte Bowers, 671 S.W.2d 931, 935 (Tex. App.—Amarillo 1984, no pet.). 
The first element is established by operation of law through the constitutional and
statutory provisions that enumerate the kinds of cases the court can entertain. Id. The
second element is established either by a litigant’s voluntary entry into the court or
by the serving of process on the litigant in accordance with state procedures
consistent with due process. Id.
          In this case, the court in Harris County had jurisdiction of the subject matter
under the general laws; Texas Constitution, article 5, section 8; Texas Government
Code, section 24.007 (Vernon 2004); and Texas Government Code, section 24.424
(Vernon 2004). It acquired jurisdiction over D’Juana’s person when she was served
with a copy of the motion for contempt. Thus, at the time the Harris County court
issued the contempt order, its jurisdiction was fully activated. It is well-established
that habeas corpus will lie only to review jurisdictional defects or denial of
fundamental constitutional rights. Ex parte Watson, 601 S.W.2d 350, 352 (Tex.
Crim. App. 1980). A judgment and sentence may be collaterally attacked only where
they are void because the trial court lacked jurisdiction. Id. Here, as we have seen,
the trial court had jurisdiction. D’Juana may not collaterally attack her contempt
sentence on the basis that venue was improper. See id. We overrule issue one.
December 16, 2005 Commitment Order
          In issue two, D’Juana asserts that the December 16th commitment order is void
because it orders more punishment than was originally assessed in the October 13th
contempt and commitment order. In issue three, D’Juana asserts that the commitment
order is void because it orders punishment for contempt without providing an ability
for her to purge herself of the contempt. Here, D’Juana refers to the part of the
December 16th order that says:
IT IS FURTHER ORDERED that the prior suspension of commitment
is hereby revoked and the RESPONDENT/OBLIGOR, D’Juana Parr is
committed to the county jail of Harris County, Texas for 90 ninety days
for each separate violation on number 17, 18, 19, 20 and 21 on page 7
and 8 of this order and that RESPONDENT/OBLIGOR, D’Juana Parr
shall be confined therein day to day, until RESPONDENT/OBLIGOR,
D’Juana Parr has:
 
(1)
 
(2)
 
(3)

          D’Juana contends that the language, “day to day” adds to the 90 concurrent
days of punishment ordered in the October 13th order and fails to provide contempt
purging provisions in violation of her due process rights. Such a provision is a failed
attempt by the trial court to add a coercive form of confinement to the already
prescribed 90 days of punitive concurrent confinement. D’Juana’s attack on this
attempted coercive confinement provision is premature because she has not yet served
the 90 days of punitive confinement. See Occhipenti, 796 S.W.2d at 810 (holding it
would be premature for this court to address coercive portion of contempt order
before relator had served punitive sentence). We overrule issues two and three.
          We remand D’Juana to the custody of the Sheriff of Harris County to serve the
balance of her punitive contempt confinement ordered by the trial court.
 
 
                                                                        Laura C. Higley
                                                                        Justice

Panel consists of Justices Jennings, Hanks, and Higley.